ORDERED.

Dated: May 20, 2015

_____
Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No. 8:10-bk-05854-MGW |
| | Chapter 7 |
| John William West, III, and | |
| Kelly Lynn West, | |
| | |
|     Debtors. | |
| _____/ | |
| | |
| Florida Lawyers Mutual | Adv. No. 8:13-ap-00694-MGW |
| Insurance Company, | |
| | |
|     Plaintiff, | |
| | |
| v. | |
| | |
| John W. West, III, P.A., *et al.*, | |
| | |
|     Defendants. | |
| _____/ | |

**MEMORANDUM OPINION AND ORDER
ON MOTIONS FOR SUMMARY JUDGMENT**

    Florida Lawyers Mutual Insurance Company issued a malpractice policy in favor of John West, the Debtor in this bankruptcy case, which expressly excludes losses resulting from (among other things) dishonest or fraudulent acts. Here, the Court previously found that $212,478 West owes Aleta Chrisman (as personal representative of her father's estate) was nondischargeable

under Bankruptcy Code § 523(a)(2) and (4) because West, a lawyer who specializes in trusts and estates work, made fraudulent misrepresentations to Chrisman and abused his position as a fiduciary to obtain an exorbitant fee from her father's estate. Chrisman now seeks to recover her nondischargeable judgment from Florida Lawyers Mutual—West's malpractice carrier. This Court must decide whether Chrisman is precluded, as a matter of law, from recovering her nondischargeable judgment against the Debtor from Florida Lawyers Mutual because of the policy exclusion for dishonest or fraudulent conduct.

## Background

Eagleton B. Chrisman and Irene Chrisman were married for more than fifty years. Together, they raised three children: Aleta Chrisman, Roger Chrisman, and Vera Chrisman Plescia. Eagleton and Irene spent much of their lives in New Jersey. But as they reached their golden years, they moved south to Sarasota, Florida. Having become a resident of a new state, Eagleton decided to review his estate plan. Knowing this, a close friend who was also an accountant, Ray Leich, referred Eagleton to a local attorney, John W. West, III. Over the following years, West assisted Eagleton with tax and estate planning. All told, West represented Eagleton for the better part of a decade.

The events of relevance here began in June 2005, when West and Eagleton met to amend Eagleton's last will and testament and to update his living trust.[1] During this time, Eagleton designated Irene as the personal representative of his estate and Aleta as the alternate; he designated himself and Irene as co-trustees of his trust.[2] Upon the death of either of them, West

---

[1] *Aleta Diane Chrisman, as Personal Representative of the Estate of E. Boyer Chrisman, a/k/a Eagleton Boyer Chrisman, and as Co-Trustee of the E. Boyer Chrisman a/k/a Eagleton Boyer Chrisman Revocable Living Trust, dated June 25, 2005 v. John William West, III*, 8:10-ap-00824-MGW, Adv. Doc. No. 24 at ¶ 3 ("Dischargeability Proceeding").

[2] Adv. No. 10-ap-00824, Adv. Doc. No. 24 at ¶ 3.

was to step in as co-trustee.[3] Upon the death of the surviving spouse, Aleta would serve with West.[4] Unexpectedly, Eagleton passed away on May 7, 2008.

Two weeks later, Aleta, West, and West's paralegal (Sandra Wigglesworth) first met to discuss Eagleton's estate.[5] During this first meeting, there was no discussion of West's legal fees.[6] Six weeks later, on June 2, 2008, the group met again. This time, Irene was also in attendance, but due to her failing health, she resigned her appointments as personal representative and co-trustee.[7] Aleta stepped up to become the personal representative of her father's estate and the co-trustee of his living trust.[8]

At the close of the June 2 meeting, during which West agreed to represent Aleta in both her capacity as personal representative and as co-trustee, Aleta signed West's "standard" three-page fee agreement and left it with West. The fee agreement, however, did not indicate specifically what West was charging for his work.[9] Four days later, Aleta returned to West's office to pay court filing fees and to pick up a signed copy of the fee agreement.[10] While there, Aleta, who was still uncertain about West's fees, looked to Wigglesworth for guidance.[11] According to Aleta, Wigglesworth indicated that the total cost of representation, which was set

---

[3] Adv. No. 10-ap-00824, Adv. Doc. No. 24-3 at p. 3.

[4] *Id.* at p. 3.

[5] Adv. No. 10-ap-00824, Adv. Doc. No. 24 at ¶ 6.

[6] *Id.* at ¶ 6.

[7] *Id.* at ¶ 7.

[8] *Id.* at ¶ 7.

[9] *Id.* at ¶ 9.

[10] *Id.* at ¶ 11.

[11] *Id.* at ¶ 11.

by Florida law, would be between one and one-and-a-half percent of the value of Eagleton's estate.[12]

West and Aleta next met on July 17, 2008, when West first showed Aleta the exact amount he was charging for his work: $355,887.[13] Aleta was shocked. But over the following months, she paid him $237,258.[14] Eventually, the relationship totally soured, and following a disagreement in mid-October 2008 over management of the trust funds, West resigned as co-trustee, although he continued to counsel Aleta.[15]

The following month, Aleta and her sister Vera met with Ray Leich to discuss the preparation of the estate's tax return. The three of them also discussed West's representation. Upon learning the details of the fee agreement, Leich shared Aleta's initial reaction—he was outraged. Shortly thereafter, on Leich's advice, Aleta terminated West and hired new counsel. On February 11, 2009, Aleta, individually and as personal representative and co-trustee, along with her mother and two siblings, filed a lawsuit against West in state court to recover the fees that West collected.

Just over a year later, West and his wife jointly filed for chapter 7 bankruptcy. Following West's bankruptcy filing, Aleta filed an adversary proceeding against West seeking to have the $237,258 she paid West determined to be a nondischargeable debt.[16] In a one-count complaint,

---

[12] *Id.* at ¶ 11.

[13] Adv. No. 10-ap-00824, Adv. Doc. No. 39 at p. 7.

[14] Adv. No. 10-ap-00824, Adv. Doc. No. 24 at ¶¶ 12-13.

[15] *Id.* at ¶ 36.

[16] Adv. No. 10-ap-00824, Adv. Doc. No. 1. Aleta initially named just West as a defendant. But two years into the litigation, Aleta moved to amend her complaint to add Florida Lawyers Mutual as a codefendant. Adv. No. 10-ap-00824, Adv. Doc. No. 125. The Court granted the motion to amend, and Aleta filed a second amended complaint. Adv. No. 10-ap-00824, Adv. Doc. Nos. 131 & 135.

Aleta alleged that West used his capacity as co-trustee to improperly direct, influence, or coerce her into entering into the fee agreement.[17] This behavior, Aleta alleged, constituted fraud or embezzlement.[18] If so, she argued, any liability would be nondischargeable under Bankruptcy Code §§ 523(a)(2)(A) and § 523(a)(4).[19]

On whole, the evidence at trial overwhelmingly established that the debt owed to Aleta was nondischargeable under § 523(a)(2)(A). In particular, West falsely represented to Aleta that Florida law required him to charge the estate $355,887 for his work. And he furthered this misrepresentation when he told Aleta that her father had approved this arrangement. These were misrepresentations of present fact that West intended Aleta to rely upon, which she did. And rightfully so. West had promised to take good care of Eagleton's affairs, and she had no reason to doubt him.

The evidence also established the debt owed to Aleta was nondischargeable under § 523(a)(4) because West committed a "fraud or defalcation while acting in a fiduciary capacity." Aleta reposed great trust in West due to his relationship with her father. And West used this position of power to siphon exorbitant fees from the estate. The honest thing to do would have been to advise Aleta of the alternative fee arrangements available to her and to allow her time to consult outside counsel. This, of course, would be true even if West had not previously had discussions with Eagleton about this very matter. Ultimately, it became clear that Aleta would not have signed the fee agreement had West honored his fiduciary duties.

---

[17] Adv. No. 10-ap-00824, Adv. Doc. No. 3 at ¶ 9.

[18] Adv. No. 10-ap-00824, Adv. Doc. No. 3 at ¶¶ 24-25.

[19] Bankruptcy Code § 523(a)(2)(A) explains that a discharge under Title 11 does not discharge a debtor for money, property, or services to the extent obtained by "false pretenses, a false representation, or actual fraud." Similarly, § 523(a)(4) denies a discharge for liability "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

Having determined that the debt owed to Aleta was nondischargeable, the Court held an additional day of trial to determine damages. After hearing all of the testimony, including experts from both sides, the Court concluded that only $24,780 of the $237,258 that West collected from Aleta was actually earned.[20] Accordingly, on July 30, 2013, the Court entered a $212,478 final nondischargeable judgment against West, which was later affirmed by the district court on appeal.[21]

Florida Lawyers Mutual has sued Aleta and West seeking a declaration that it is not liable for the nondischargeability judgment under the terms of West's professional liability policy.[22] The professional liability policy at issue only provides coverage for acts, errors, or omissions in connection with "professional services."[23] "Professional services" is defined as services performed by an insured (i) in a lawyer-client relationship on behalf of a client; or (ii) as a trustee.[24] The professional liability policy specifically provides that "professional services" do not include "any matters pertaining to or relating to an Insured lawyer's charges for services or expenses."[25] In addition to carving out billing disputes from the coverage provisions, the professional liability policy also expressly excludes any claim "arising out of a criminal, dishonest, intentional, malicious or fraudulent act, error or omission committed by" West.

---

[20] Adv. No. 10-ap-00824, Adv. Doc. No. at 19:14-16.

[21] Adv. No. 10-ap-00824, Adv. Doc. Nos. 190 & 197.

[22] Adv. Doc. No. 3-8. Florida Lawyers Mutual also named Roger Chrisman, who is now serving with Aleta as co-trustee of Eagleton's trust, as a Defendant. The lawsuit for declaratory judgment was originally filed in state court. Aleta then removed the case to this Court and then filed a counterclaim seeking a declaration that Florida Lawyers Mutual was liable. Adv. Doc. Nos. 3-1 & 7.

[23] Adv. Doc. No. 2-1 at § II.A.

[24] *Id.* at § I.15.

[25] *Id.*

Florida Lawyers Mutual and Aleta have both since moved for summary judgment.[26] On the one hand, Florida Lawyers Mutual argues that the policy does not cover the nondischargeable judgment because that judgment did not arise out of "professional services" since it is really just a fee dispute.[27] And even if the nondischargeable judgment did result from "professional services," Florida Lawyers Mutual says it is nevertheless excluded because this Court previously determined the judgment was based on dishonest or fraudulent conduct, and the policy expressly excludes losses arising from dishonest or fraudulent conduct.[28] On the other hand, Aleta argues the judgment arises out of a breach of fiduciary duty by West—not a fee dispute—and that the "dishonest of fraudulent conduct" exclusion is limited to criminal acts, which West's conduct falls short of. The Court concludes that the nondischargeable judgment is excluded from coverage under the "fraudulent and dishonest conduct" exclusion.

## Conclusions of Law

Two well-established principles guide this case from the beginning. First, for more than 100 years, the Florida Supreme Court has maintained that provisions of an insurance policy limiting or avoiding liability are construed strictly against the insurer and liberally in favor of the insured.[29] Second, "[i]f the language used in an insurance policy is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning of the language used so as to give effect to the policy as it was written."[30] An insurance policy is ambiguous where the

---

[26] Adv. Doc. Nos. 16 & 33. Both parties filed opposition to the other party's summary judgment motion. Adv. Doc. No. 32 & 40.

[27] Adv. Doc. No. 16 at 11-15.

[28] *Id.* at 15-18.

[29] *Palatine Ins. Co. v. Whitfield*, 74 So. 869, 873 (Fla. 1917) (citing *L'Engle v. Scottish Union & Nat. Fire Ins. Co.*, 37 So. 462, 466 (Fla. 1904) (internal quotations omitted)).

[30] *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004).

"policy language is susceptible to more than one reasonable interpretation, one providing coverage and [] another limiting coverage."[31] Those two principles of contract interpretation dictate the outcome here.

As an initial matter, it appears the nondischargeable judgment, contrary to claims by Florida Mutual Lawyers, falls within the coverage provisions. To be sure, the judgment is for excessive fees that Aleta paid West. And the policy unquestionably carves out billing disputes from the coverage provisions.[32] But this is not the typical case where a client believes a lawyer overcharged for his or her services. Here, the Court previously concluded that West made fraudulent misrepresentations to Aleta and abused his position as a fiduciary to obtain an exorbitant fee from her father's estate. It just happens that the damages are the amount of fees Aleta (as personal representative of her father's estate) paid. Had West misrepresented to Aleta that certain work needed to be done for her father's estate, Aleta would have a claim for the return of the fees paid. But that would not convert the claim into a fee dispute that falls outside the policy's coverage provisions. It is hard to see how this case is different. In any event, although the Court would be inclined to rule that the nondischargeable judgment does fall within the policy's coverage provisions, the Court need not decide that issue since the judgment is plainly excluded from coverage under the "dishonest or fraudulent conduct" exclusion.

According to its plain terms, the policy expressly excludes any claim "arising out of a criminal, dishonest, intentional, malicious or fraudulent act, error or omission committed by" West. And West's misrepresentations to Aleta and breach of his fiduciary duty were intentional, dishonest, and fraudulent. So the policy would seem to exclude coverage for the

---

[31] *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).

[32] Adv. Doc. No. 2-1, Ex. A at § II.A.

nondischargeable judgment. But Aleta, who concedes West's behavior was "egregious," argues the exclusion does not apply to preclude coverage here for two reasons.

First, she believes that the exclusion strikes at a narrow category of behavior, largely suggesting that it applies only to criminal acts.[33] Citing a number of cases from a variety of jurisdictions, Aleta argues that the exclusion is only applicable if the conduct is clearly fraudulent or criminal.[34] According to Aleta, the exclusion does not apply if the fraudulent conduct is not intentional, if the fraudulent intent can only be inferred, or the conduct at issue only constitutes constructive fraud or a simple breach of fiduciary duty.

Second, Aleta maintains that the district court's opinion draws back on this Court's findings and that its more tempered characterization of West's behavior controls in deciding Florida Lawyers Mutual's liability. To prove this point, Aleta relies on phrases in the district court's opinion that purport to reinforce her conclusion, such as, "West acted in *reckless disregard* of these duties."[35] In effect, Aleta is arguing this Court should read the district court's decision on appeal to affirm only that West engaged in reckless conduct, which, in Aleta's view, would not fall within her narrow interpretation of the exclusion.

But neither argument justifies this Court overlooking the plain language of the exclusion. For starters, this Court did previously find that West engaged in intentional fraud. The fact that his conduct may have also constituted a breach of fiduciary duty does not overcome the fact that West also committed fraud. And construing the district court's decision to find that West only engaged in reckless conduct is selective reading at its best. What Aleta fails to recognize is that

---

[33] *See* Adv. Doc. No. 32 at p. 7 (referring to the exclusion as the "criminal exclusion" and arguing that "courts have generally interpreted *criminal exclusions* very narrowly" (emphasis added)).

[34] *Id.* at 7-10.

[35] *Id.* at 11-12 (citing *West v. Chrisman* (*In re West*), 518 B.R. 655, 664-665 (M.D. Fla. 2014)) (emphasis added).

the district court affirmed this Court's judgment in full. This means that district court approved of each legal conclusion that the Court reached.[36] In addition, because West did not challenge any of the Court's factual findings as clearly erroneous, those stand as well. Whatever language the district court used, then, to describe the record evidence is immaterial here. What matters is that the district court agreed with this Court that West intentionally defrauded Aleta.

## Conclusion

Florida law requires courts to liberally construe policy exclusions in favor of insureds.[37] This is not to say that courts must always side against insurers. When policy "language is plain and unambiguous, there is no occasion for the Court to construe it."[38] Instead, courts must simply apply the policy's plain meaning.[39] The policy exclusion in this case is unmistakably clear: it does not cover dishonest or fraudulent conduct.

A fair look at the facts of this case definitively shows that Aleta's claim falls within that exclusion. To review, West lied to Aleta by telling her that the he was bound by Florida law to charge a percentage fee. He furthered this fraud when he told Aleta that her father had approved this arrangement. And in a time where he knew she was dependent upon his professional judgment and care, West took advantage of the trust and confidence that Aleta placed within him. This was intentional and dishonest—to say the least. Even the narrowest reading of the

---

[36] District courts review de novo the legal conclusions made by bankruptcy courts. *Carrier Corp. v. Buckley* (*In re Globe Mfg. Corp.*), 567 F.3d 1291, 1296 (11th Cir. 2009).

[37] *Palatine Ins. Co. v. Whitfield*, 74 So. 869, 873 (Fla. 1917).

[38] *Rigel v. Nat'l Cas. Co.*, 76 So. 2d 285, 286 (Fla. 1954)

[39] *Travelers Indem. Co. v. PCR Inc.*, 889 So. 2d 779, 785 (Fla. 2004).

policy's terms would not cut in favor of Aleta's position. Florida Lawyers Mutual is off the hook for West's liability. West is not. He remains liable to Aleta for $212,478.[40]

Accordingly, it is

**ORDERED:**

1.  The motion for summary judgment by Aleta Chrisman (Doc. No. 33) is DENIED.

2.  The motion for summary judgment by Florida Lawyers Mutual Insurance Company (Doc. No. 16) is GRANTED.

3.  The Court will enter a separate final judgment in favor of Florida Lawyers Mutual.

---

Attorney Patrick Mosley is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

**Patrick Mosley, Esq.**
**Hill, Ward & Henderson, P.A.**
*Counsel for Florida Lawyers Mutual Insurance Co.*

**Robert E. Johnson, Esq.**
**GrayRobinson, P.A.**
*Counsel for Aleta Chrisman*

---

[40] Adv. No. 10-ap-00824, Adv. Doc. No. 190.